This matter comes before the court on the return of an order to show cause based upon charges made by the Honorable John Bentley, a vice-chancellor of the State of New Jersey, against Joseph P. Hayden, a member of the bar of this state, alleging that the said Hayden entered his chambers in the Union Trust Company building, 75 Montgomery street, Jersey City, on the 21st day of February, 1926, during his absence and took away certain papers, being copies of opinions of the said vice-chancellor, and also certain blank forms of orders and writs, certain sheets of stenographer's paper and a stamped envelope containing rubber bands. It is charged that such conduct of the said solicitor was larceny and contempt of court.
It was suggested by the court to the respondent that under the practice now established he could be confronted by the witnesses against him and his counsel could cross-examine them. His counsel replied that his client was not desirous of doing this but would proceed with the case upon affidavits. The matter was heard in this way.
The principal affidavit read to sustain the charge against Hayden comes from Calvin Cook, night watchman of the Union Trust Company building, Jersey City. He swears that on Sunday night, February 21st, 1926, about five minutes of six, he ran the elevator up to the seventh floor for the purpose of winding a clock which is on that floor, situated between the elevator and the chambers of Vice-Chancellor Bentley. There is a door between the elevator and the vice-chancellor's chambers leading to the stairs from the seventh floor to the sixth floor, which door is in a recess in the wall. He noticed a man jumping out who had been standing against the door and he recognized the man as Joseph P. Hayden, a lawyer with offices in the building. He asked Hayden what he was doing there, but does not remember what he answered. He noticed that down where Hayden had been standing there seemed to be what looked like some papers and that it was dark and that he could not see very well. He rang the clock and then told Hayden that he would take him down. Hayden *Page 52 
got on the elevator with him and he went down to the sixth floor where he got off and rang the clock on that floor and then got back on the elevator again and took Hayden down to the second floor where Hayden got off and went into his office; that he then went back, rang his other call-boxes and then went back to the seventh floor and found a number of paper envelopes and an envelope with a rubber band upon it and that he picked them up and put them on the chair of the elevator; that his oldest granddaughter, who is eighten years of age, looked at the papers and said they were some papers of Mr. Bentley of chancery chambers He wrapped the papers up in a newspaper and placed them in his locker. That a few minutes after Hayden went out of the building and about ten to fifteen minutes later he came back into the building and told affiant that he (Hayden) had left the lights burning in his office, and asked him if he would turn out the lights, which affiant did; that he kept the papers until he came on duty Tuesday (Monday being a holiday), and then gave them to Mr. Wadsworth, the superintendent of the building. Cook is corroborated in every detail by his granddaughters, Florence Cook and Esther Cook, who were on the elevator when he ran it up to the seventh floor and found Hayden there. Charles J. Wadsworth, superintendent of the Union Trust Company building, corroborates Cook as to the delivery of package of papers found by him. Wadsworth delivered these to Vice-Chancellor Bentley's stenographer.
Armand Voute, a day watchman of the Union Trust Company building, said he was on duty on Washington's birthday, February 22d 1926, and Hayden came into the building and he took him up to the second floor, and about a quarter of an hour afterwards he had occasion to be on the second floor and Hayden asked him if he would take him up to the seventh floor. He took Hayden up on the elevator to the seventh floor and Hayden got out and walked as far as the door of Vice-Chancellor Bentley's office and then turned around and looked on the floor and then said he would go down again and that he then took Hayden down and asked him if he wanted to get off on the second floor *Page 53 
and go into his office, but Hayden said he wanted to go down to the main floor and he took him down and he went out of the building. The affidavit of the day watchman is illuminating. The visit on the 22d day of February by Hayden, which he tells of, I must assum was for the purpose of locating the papers which Cook had found on the day previous.
Arthur R. Bailey, Vice-Chancellor Bentley's stenographer, says that on the 23d day of February, Wadsworth delivered to him the following documents and papers:
Opinions —
Robert M. Baxter, Jr., petitioner, v. Maude Coleman Baxter, defendant.
Rocco Faliero et al., complainants, v. Hudson County Building Trades et al., defendants.
A.S. Thomas, complainant, v. Cornelius Flanagan et al., defendants.
Otto Venino, complainant, v. August Naegele et al., defendants.
27 sheets specially-ruled shorthand paper;
 16 blank forms for warrant of commitment bearing the seal of this court and the signature of the clerk thereof;
 11 blank forms of orders for writs of habeas corpus
to issue;
 1 blank form of writ of habeas corpus bearing the signature of the clerk and the seal of the court;
 1 blank form of order awarding the writ of ne exeat republica;
 1 envelope addressed in printing to the clerk in chancery with an uncanceled government two-cent postage stamp thereon and containing a quantity of elastic rubber bands.
Bailey further says that he saw Hayden on the elevator of the Union Trust building a day or two after they had been turned over to him — that he noticed that Hayden acted a little peculiar, he having greeted him in the usual way, "Hello, Joe," or something of that nature, and that Hayden sort of nodded and said nothing. *Page 54 
Hayden absolutely denies the charge. He says that he was not present at any time in the Union Trust building on February 21st or February 22d, or at Vice-Chancellor Bentley's office, or on the elevator of the Union Trust Company building, or in said building, and that he was absent from his office from February 20th until March 5th and was suffering from a severe cold, grippe and laryngitis. He offers the affidavits of several members of his family, who swear positively that they visited him at his home on February 21st and February 22d, at which time he is alleged to have been in the Union Trust Company building and that he was ill there and they had conversations with him.
His physician, Dr. Enright, says that he prescribed for Hayden on his visit to his office February 18th, 1926, for a cold and that on February 24th he called at his home and found him suffering from an attack of grippe and laryngitis. He did not see him according to his affidavit on February 21st or February 22d.
Edward P. Mann, a clerk in the office of Hayden Hayden, says that the respondent was suffering from a severe cold on February 20th, 1926, and that he left the office a little before noon and did not again return to the office until the afternoon of March 5th, 1926.
The case presents perplexing questions. What was the motive of the accused? It is difficult to advance a satisfactory reason for his having committed the offense. There was no pecuniary advantage and certainly no professional advantage. He had no case pending before Vice-Chancellor Bentley, nor is it shown that he had any interest in any case then pending. It appears like the act of a man devoid of his senses. His age and experience precludes the suggestion that the act can be treated as a prank of youth bent upon some mischievous adventure, but the court in this proceeding is not called upon to discover what induced the commission of this serious offense. The affidavits before the court to sustain the charge are from parties entirely disinterested while those offered by the defense are, with one or two exceptions, from close relatives — members of his immediate family. They are certain that Hayden was at *Page 55 
his home when the others say he was in the Union Trust building and the larceny of the papers took place. It is but charitable to say that they must be entirely mistaken.
I find that the respondent is guilty of the charges lodged against him and consequently is guilty of contempt of court. He will be notified when to appear and receive the judgment of the court.